FRANCIS O. J. SMITH, *in equity, versus* BENJAMIN H. ELLIS *& al.*

The authority of this Court to issue writs of injunction, is limited to the equity jurisdiction, given by the statute.

The rules of set-off in courts of general chancery jurisdiction, cannot prevail in this State, when at variance with the provisions of our statute upon that subject.

E purchased of W, a contract against S, and gave his note for the purchase money, to be paid " as soon and as fast as it may or can be collected" on the contract, and if not so collected, to be paid in four years. *Held*, the contract was not made the fund, out of which the note was to be paid.

In settling the contract, S gave to E, a negotiable note marked A, and a bond. E assigned the bond to secure some of his creditors, and negotiated the note. S, then purchased of W, the note against E. *Held*, the Court has no equitable jurisdiction to enjoin the holders of the bond and of the

note A, from proceeding upon them at law against S, or to compel them to be set off against the note which S purchased of W.

A defendant cannot claim to set off the plaintiff's demand against a note indorsed to the defendant, unless the plaintiff had agreed with the defendant to pay him such note or to receive it upon his demand.

SHEPLEY, C. J. — This case is presented upon an original with a supplemental bill, answers and proofs, accompanied by arguments in writing. The testimony with the documents is voluminous. The arguments are extensive and elaborate. The material facts may be briefly stated.

On October 23, 1835, the plaintiff, J. S. Sibley and Samuel Ward, made a contract with William, Benjamin and Nathan Weston, doing business in the name of William Weston & Co., and with Alden Flint and Jefferson Crowell, to have a large quantity of timber cut and hauled from a tract of land owned by them. William Weston & Co. and Flint & Crowell entered upon the performance of that contract. Benjamin H. Ellis, Joseph Ellis and Peter S. Ellis, became sub-contractors under Flint & Crowell, and entered upon a performance of their contract.

Suits were subsequently commenced. One by Weston and others against Smith and others, to obtain payment for cutting and hauling the timber, and another by Smith and others against Weston and others, to recover damages for violations of their contract. The Ellises were permitted to represent and to act in behalf of Flint and Crowell in the management of those suits ; and on July 9, 1839, they purchased of Weston & Co. all their interest in the contract for the sum of $4096,81, for which they gave their promissory note of that date, and an agreement to prosecute the suit at their own risk and expense. Both of these suits were subsequently referred to Edward Swan and others, who made their report in the month of September, 1841, that there was a balance due from Smith and others to Weston and others, of $6139,12. Subsequently, and during the same month, the plaintiff obtained from

Benjamin H. Ellis a discharge of his liability to pay the sum thus reported to be due, for the sum of $3000 and gave him therefor his negotiable promissory note for $1500 payable in one year, the payment of which was secured by a mortgage of real estate; and gave him a bond obliging himself to pay $1500 more in four months, unless, he should procure for the use of Ellis the notes of another person for that amount. The notes of that other person were not procured, and the sum of $250 was paid upon the bond.

On January 14, 1842, Ellis made a conditional assignment of that bond, to James W. Bradbury and others, to secure to them the payment of all sums due to them from him, and to save them harmless from all liabilities assumed by them for him.

On March 8, 1842, Ellis indorsed the note for $1500, and delivered the mortgage made to secure the payment of it to Ephraim Woodman, to secure the payment of a note then made by him and others to Woodman for $600, for a loan of money.

In the month of November, 1841, Weston & Co. commenced a suit upon the note for $4096,81, against the Ellises, and caused Smith to be summoned as their trustee. This suit does not appear to have been entered in Court or further prosecuted.

On April 29, 1842, Smith made a contract to purchase of Weston & Co., so much of that note for $4096,81, as would be sufficient to discharge his note for $1500, and the balance of $1250 due upon the bond, and the note indorsed by Weston & Co. to Smith.

There are many other facts exhibited by the testimony and documents, which are not regarded as material in coming to the conclusion which is to be stated.

The bill seeks to have the note and bond made by Smith, and payable to Ellis, discharged or annulled by a set-off against so much of the note made by the Ellises, and payable to Weston & Co. and indorsed to Smith, as may be sufficient for that purpose, or to have a perpetual injunction against any suits being commenced or prosecuted upon them against Smith.

The counsel for the plaintiff present the case as within the equity jurisdiction of this Court upon three grounds, fraud, trust, and the power to issue writs of injunction.

1. The last will be first noticed. This is said to be " an original power," and " not strictly confined to those heads, under which final relief is found," that " it reaches where other relief would not extend."

The power of this Court to issue writs of injunction is derived from statutes. It may be exercised as an independent power in certain specified cases, not including this case. The only power applicable to a case like the present is derived from the statute, c. 96, § 11, providing, that " the Court may issue writs of injunction in all cases of equity jurisdiction, when necessary to prevent injustice. Before a writ of injunction can properly be issued by virtue of this provision, the case must be determined to be one within the equity jurisdiction. By the use of the terms " cases of equity jurisdiction," those cases only were designed to be designated, which were within the equity jurisdiction of this Court. That jurisdiction, conferred by the tenth section, is not in any degree enlarged by the eleventh section.

The jurisdiction of the Court in cases of fraud and trust, when the party has not a plain and adequate remedy at law, is ample. It remains for consideration, whether a case for relief is presented, under either of those heads of equity jurisdiction.

2. It appears, that Benjamin H. Ellis has appropriated the promissory note and bond received from the plaintiff, to other uses than to pay the note given by the Ellises to Weston & Co. and indorsed to the plaintiff. This, it is contended, was a fraudulent act. There is no other proof of fraud.

A debtor may pay one creditor in preference to another, except in certain cases not including this case, without committing any fraud upon those creditors; who may thereby be prevented from obtaining payment. By the assignment of the bond and indorsement of the note made by the plaintiff, no fraud upon him was committed, unless he had before that time

become legally entitled to have them set off or annulled by their application in part payment of the note given by the Ellises to Weston & Co. Whatever may be the rules of set-off in equity, they can not prevail in this State, when they are at variance with the provisions of our statute, relating to that subject. A court of equity acting upon an existing state of facts, may in conformity to its own rules decree, that a set-off should be made, when if either party had before acted in such a manner, as would have prevented the existence of such a state of facts, and thereby have prevented any set-off, he would not have been guilty of any fraud.

Two persons might hold negotiable promissory notes, one made by each and payable to the other, and either might negotiate his own note without committing any fraud upon the other ; and yet, if those notes were found remaining in the hands of each payee, a court of equity or even a court of law might cause a set-off to be made. A person can have no such right, to have one chose in action set off against another, that another person would commit a fraud upon him by taking such a course, as would prevent it, unless that right to have a set-off made is no longer contingent and dependent upon future events, but has become absolute and legally established.

The right of set-off is regulated by statute, c. 115, § 24 to 48 inclusive. The provisions of the twenty-ninth section are, " no demand shall be set off, unless it was originally payable to the defendant in his own right, except as hereinafter provided." The only subsequent provisions applicable to a case like the present, are contained in the thirtieth section. Its provisions are, " any demand which has been assigned to the defendant with notice to the plaintiff of the assignment, before the action was commenced, may be set off in like manner, as if it had been originally payable to the defendant, if the plaintiff shall at any time have previously agreed to receive it in payment or part payment of his demand, or to pay the same to the defendant, and not otherwise."

If suits were pending in the name of Benjamin H. Ellis against Smith, upon the bond and note made by him, he could

not file the note made by the Ellises, and payable to Weston & Co. and indorsed to him, and have a set-off made ; for there is no proof, unless it be derived from the language used in that note, which will be noticed under the head of trust, that Ellis had agreed to receive the note payable to Weston & Co. in payment of his demands against Smith, or to pay that note to Smith.

The plaintiff does not prove by any testimony not contained in the language used in making the note, that he had acquired any legal right to have the note payable to Weston & Co. applied to pay the debts due from him to Ellis, or any legal right to prohibit Ellis from indorsing and assigning those demands. Such indorsement and assignment cannot therefore, be regarded as fraudulent acts committed upon his legal rights, unless those rights arise out of the language used, in making the note to Weston & Co.

3. The trust alleged is, that the Ellises by their contract with Weston & Co., made on July 9, 1839, were obliged to apply the money collected of Smith and others, to the payment of the note given by them to Weston & Co.

If such be the legal effect of that contract, the moneys so collected would constitute a trust fund to be applied for that purpose. And the Ellises, by an appropriation of it to other purposes, would be guilty of fraud.

The only evidence or declaration of the alleged trust, is to be found in the language used in making the note to Weston & Co.

It is quite certain, that the purchase made by the Ellises of the interest of Weston & Co. in the contract, was absolute ; that they could legally assign and dispose of the interest thus acquired, according to their own pleasure, and of the money collected or received on that account, unless they had engaged to do otherwise. If their note to Weston & Co., was made payable out of money thus collected, it would not be negotiable, and the plaintiff, by the indorsement of it, will have acquired only an equitable interest in it. That it was not intended to be payable out of that fund, is quite apparent, for it

was payable absolutely in four years, although no money should have been collected of Smith and others.

The Ellises agreed to pay, " as soon and as fast as the same may be or can be collected, on a contract this day assigned by Weston & Co., to us." They did not engage to apply the very money thus collected, to pay Weston & Co., or to collect it for their use. The language appears to have been used for the purpose of fixing the time, when Weston & Co. would be entitled to demand payment ; and not for the purpose of designating any fund out of which payment should be made. Weston & Co. could have maintained no action against the Ellises founded solely upon an allegation, that they had assigned all their interest in that contract, and in the money to be collected of Smith and others, to another person.

The proof being insufficient to establish the alleged fact, that the note payable to Weston & Co. was to be paid out of the money collected of Smith and others, no such case is presented as would authorize this Court to entertain it for the purpose of granting relief.

It does not appear to be essential to notice particularly, the other points and positions presented in the arguments. But to prevent any misconception, it may be proper to observe, that it is not intended to intimate, that all the necessary parties are before the Court to authorize a decree for the plaintiff ; or that all the depositions could be regarded as legal testimony ; or that the plaintiff would be entitled to relief in a court of unlimited equity jurisdiction.

*Bill dismissed with costs for defendants.*